BLACK DIAMOND COAL COMPANY, Appellant, v. ANDERSON COAL
COMPANY, Appellee.

**EVIDENCE:**   Burden of Proof—Purchase by Corporate Officers.   A
   plaintiff suing for the value of goods sold to a corporation has the
   burden to prove: (1) That the person negotiating for the purchase
   was the authorized representative of the corporation; and (2) that
   said representative purported to act in behalf of *said* corporation.
   Evidence held to present jury question on both propositions.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

SEPTEMBER 19, 1922.

ACTION for balance due on account for coal sold and de-
livered to the defendant, a corporation doing business in Des
Moines.   The defense was, in substance, a general denial and
a special denial that the persons who ordered the coal from the
plaintiff had any authority from the defendant so to do on be-
half of the defendant.   At the close of plaintiff's evidence, a
motion for a directed verdict for the defendant was sustained.
The plaintiff appeals.—*Reversed and remanded.*

*Charles F. Maxwell* and *James B. Ryan,* for appellant.

*Miller, Kelly, Shuttleworth & Seeburger,* for appellee.

EVANS, J.—The plaintiff is a copartnership, engaged in the
mining of coal and in the sale of its product.   The defendant is
a corporation, which, shortly previous to the transactions in-
volved herein, was also engaged in mining and selling coal, and
was the owner of a mine known as the Andersonville mine.   In
September, 1919, the defendant leased its coal mine, and ceased
mining.   Some weeks thereafter, certain officers of the defend-
ant company called at the place of business of the plaintiff com-
pany and entered into certain negotiations for the purchase of
coal, to be billed F. O. B. Melcher to the Anderson Coal Com-

pany at Des Moines.  Pursuant to these negotiations, coal was shipped from time to time, beginning January 9, 1920, and ending September 3, 1920.  The sum total of shipments amounted to about 40 carloads, amounting in value to about $6,700, upon which there was a balance due of about $1,400.  The real point upon which the defense is concentrated is not disclosed in the pleadings.  It is made to appear in the record only by objections to evidence and by cross-examination of witnesses and by the argument.  It is indicated by the following quotation from appellee's brief in this court:

"The real fact is that the plaintiff in this case sued the Anderson Coal Company, Incorporated, when the action should have been brought against W. J. Miller, doing business under the trade name of Anderson Coal Company, with offices at 211 East Locust Street, Des Moines, Iowa.  In other words, the defendant against whom the action was brought was not the proper party."

The implication of the foregoing is that one Miller purchased the coal from the plaintiff, and that he was operating under the trade name of Anderson Coal Company.  Though there is no evidence in the record that Miller was using such a trade name, or that there was any other Anderson Coal Company operating in the city of Des Moines, or in any other place, than the defendant company, we may as well keep before us the implication of the argument, in considering the sufficiency of plaintiff's evidence to go to the jury.

The legal burden was undoubtedly upon the plaintiff to identify the defendant.  It had the burden of proving the following:  (1)  That the persons who negotiated for the purchase of the coal were the authorized representatives of this defendant;  (2) that in their negotiations they purported to act in behalf of this defendant, and not in behalf of someone else.

The persons who negotiated with the plaintiff and assumed to act for the defendant therein were W. E. Evans and H. E. Evans.  The latter is also known in the record as Dick Evans. H. E. Evans was secretary of the defendant company and one of its directors.  W. E. Evans had been its superintendent for years, and was vice president and a director.  They conducted their negotiations with Rowley, the general manager of the plain-

tiff company. Rowley had known them for years, and had known their official connection with the Anderson Coal Company. W. E. Evans had been in the habit of making contracts for the company. A corporation necessarily acts through individual agents. These do not ordinarily carry with them the articles of incorporation or resolutions of the board of directors. If a vice president and secretary and superintendent and two directors are not presumptively clothed with sufficient power of agency to buy a carload of coal for a coal company, we are at a loss to see what practical method of proof would be available to any patron who had ventured to deal upon the faith of their assumption of authority.

Did they assume to act for the defendant company? Rowley testified as follows:

"A. Yes, sir. I talked with them in January, 1919. That conversation took place at our coal mine at Dallas, Iowa. There were present William Evans, Dick Evans, R. C. Goff, and myself, and another man that was there. I cannot recall his name. They came down there and asked me if they could purchase some coal off of me, if I had any to sell; that they wanted to purchase the whole output of our coal. I told them that at that time it was impossible for me to tell just what we could furnish them, but we would furnish them what we could, and we had some slack there. He looked at the slack, and told me they would take the slack, and I sold it to them, and shipped it. They also wanted to know if I could continue to let them have coal along, and I told them I could and would, as much as I had to spare. * * * A. Well, they told me that they had the best yard there was in Des Moines; that they had gone out of the mining business; that they were now in the retail business; that they did not intend to operate any mines any more, for they could do better in retail business than in the other; that they had a good man there, and to ship the coal to the Anderson Coal Company, at Des Moines, Iowa. I do not know that there was anything said as to where I was to deliver this coal to the Anderson Coal Company."

All the cars were billed to the Anderson Coal Company, Des Moines, Iowa, in accordance with the direction of the Evanses. The forty bills of lading directed delivery to the An-

derson Coal Company, Des Moines.  The plaintiff knew no other coal company in Des Moines than the defendant.  There is no evidence that there was any.  The correspondence of the plaintiff was all addressed to the Anderson Coal Company.  All correspondence received was signed by the Anderson Coal Company.  The letterheads received in such correspondence displayed the name of Anderson Coal Company.  Some of them also disclosed the name of ''W. J. Miller, Manager of the Retail Department.''  At one time while the account was accruing, Rowley called at the purported office of the Anderson Coal Company.  The name was displayed upon the windows.  He found W. E. Evans inside, in apparent charge.  At that time, he was introduced to Miller.  He had not known him before. Rowley testified:

''I only know W. J. Miller, who is designated on the letterhead as manager of the retail department, through correspondence.  I met him at the time I met Mr. Evans in his office, and once in Dallas, and I think one other time on the street over on the east side.  The first time I met him was when I met him in the office over there on the east side.  That was when I went to the office of the Anderson Coal Company for the purpose of seeing Mr. W. E. and H. E. Evans, and that was the occasion when Mr. Evans introduced him to me. * * * They told me they were well pleased with the coal that we had shipped them.  We talked about making further shipments.  I wanted to continue shipping them as much as I could possibly.  I was talking with William E. Evans.  I did talk to William at that time about the payment for this coal and the coal to be shipped in the future.  We talked of different things—some holdings that they had was one thing we talked about.  He got his map and showed us some land that they had right close to our mine, or drillings, and so on.  They showed us the land the Anderson Coal Company had,—the maps or profiles and the holes that were drilled on those. * * * When I went to the office of the Anderson Coal Company at 211 East Locust Street, the first person I met there was William E.  He was superintendent of the Anderson Coal Company at that time, and an officer of that company.  He invited me in behind the counter.  We sat down in a friendly way, and went over the different phases of the day.  That is

about all I can recall, other than after the business part came in.''

The implications of the appellee's argument are that the plaintiff was dealing with W. J. Miller all the time, and not with the Anderson Coal Company. And yet, on the occasion of his visit to the office in Des Moines, while Miller was present, Rowley's business negotiations were had with W. E. Evans. The plaintiff used W. E. Evans as a witness. The facts principally relied upon by the defendant were put in evidence by the cross-examination of Evans. These were that the Anderson Coal Company did no business after it leased its mine, in September, 1919; that it gave up its offices in west Des Moines on October 19, 1919; that the company continued its existence and held its property. Needless to say that this evidence could not nullify the other testimony in the case, so as to justify a directed verdict. The retail yard at which the coal purchased from the plaintiff was delivered was on the east side. The office in use there purported to be that of the Anderson Coal Company. The superintendent and vice president and secretary and directors of the defendant company appéared to use it as headquarters. The letterheads in use referred to it as a retail department. Miller purported to be the ''manager.'' He did not purport to be the owner. The defendant company, through its superintendent and vice president and secretary and directors, knew all these things. The declaration of the letterheads was that Miller was the manager of the retail department of the Anderson Coal Company. That relation to the company did not make Miller liable for the plaintiff's account. There was but one Anderson Coal Company known to any of the parties; nor does the record disclose, in fact, that there was any Anderson Coal Company other than the defendant in Des Moines. That the plaintiff in good faith believed it was dealing with the defendant, and that the defendant's officers knew that the plaintiff so believed, has abundant support in the record.

The direction of a verdict for the defendant was erroneous, and the judgment of the district court is, accordingly, reversed and the cause remanded.—*Reversed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.